**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| LOYDA E. FELIX-SANTIAGO,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | CIVIL NO.: 24-1217 (MEL) |

**OPINION AND ORDER**

**I.   PROCEDURAL AND FACTUAL BACKGROUND**

Pending before the Court is Ms. Loyda E. Felix-Santiago's ("Plaintiff") complaint challenging the decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 3. On March 4, 2020, Plaintiff filed an application for Social Security benefits. Tr. 516-17. Plaintiff alleged that she initially became unable to work due to disability on August 31, 2019 (the "onset date"). Tr. 57. Prior to the onset date, Plaintiff's past relevant work was as a phlebotomist. Tr. 68. Plaintiff's claim was initially denied on September 18, 2020, and upon reconsideration on October 22, 2020. Tr. 420-22.

Thereafter, at Plaintiff's request, a hearing was conducted on January 19, 2023, before Administrative Law Judge Juan E. Milanés ("the ALJ"). Tr. 41-71. On February 10, 2023, after the hearing, Plaintiff's disability and benefits claim request was denied. Tr. 48-75. Plaintiff filed a Request for Review of the ALJ decision on February 17, 2023. Tr. 509-12, 513-15. The Appeals Council ("AC") denied Plaintiff's request on April 2, 2025, rendering the ALJ's decision the final decision of the Commissioner, subject to judicial review. Tr. 1-9. Plaintiff filed a complaint on May 14, 2024. ECF No. 3. Both parties have filed supporting memoranda. ECF Nos. 20, 23.

## II.  LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether her factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." *López-Vargas v. Comm'r of Soc. Sec.*, 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing *Da Rosa v. Sec'y of Health & Human Servs.*, 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); *Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. *See Ortiz*, 955 F.2d at 769 (citing *Rodríguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir.

1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." *Id*. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." *Rodríguez Pagán v. Sec'y of Health & Human Servs.*, 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

### B. Disability under the Social Security Act

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; *Barnhart v. Thomas*, 540 U.S. 20, 24–25 (2003); *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 804 (1999); *Yuckert*, 482 U.S. at 140–42. If it is conclusively determined that plaintiff is or is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). However, if the ALJ cannot conclusively determine whether a plaintiff is or is not disabled at a given step, then the analysis will proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If she is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If she does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments

listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent her from doing the type of work she has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).

In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functioning capacity ("RFC"). *Id*. If the ALJ concludes that plaintiff's impairment or impairments do prevent her from performing her past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with her age, education, and work experience, allows her to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

## III.   THE ALJ'S DECISION

In his decision dated February 10, 2023, the ALJ found that Plaintiff had met the insured status requirements of the Social Security Act through June 30, 2020, the date last insured. Tr. 56. At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the onset date of August 31, 2019, through the end of the relevant period. Tr. at 57. At step two, the ALJ determined that Plaintiff had the following severe impairments: cervical spine degenerative disc disease with spondylosis and cervical straightening lordosis, lumbar spine degenerative disc disease, grade 1 arterolisthesis on L4 over L5 levels and hypertrophic osteoarthrosis changes, hypertrophic osteoarthritis, degenerative joints disease, bilateral trigger thumbs, major depressive disorder, and generalized anxiety disorder. *Id*. At step three, the ALJ

found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). *Id*. Next, the ALJ determined that during the relevant period:

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can frequently climb ramps and stairs and can occasionally climb ladders, ropes, and scaffolds. The claimant can occasionally crawl, and can frequently balance, stoop, kneel and crouch. She can frequently reach in all directions bilaterally and can frequently handle and finger bilaterally. The claimant must avoid concentrated exposure to unprotected heights and hazardous machinery. She is limited to simple tasks in a routine work environment and can occasionally perform conveyor belt jobs. The claimant can frequently interact with supervisors, coworkers and with the public.

Tr. 61. At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work as a phlebotomist. Tr. 68. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert ("VE"). *Id*. at 69. The VE testified that a hypothetical individual with a similar RFC would be able to perform the following representative occupations: "cashier II," inspector and hand packager, and office helper. Tr. 69-70. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 70.

### IV.   LEGAL ANALYSIS

Plaintiff advances two main arguments. First, Plaintiff argues that the AC erred when it denied Plaintiff's request for review and did not consider "new and material evidence." ECF No. 20 at 13-18. Second, Plaintiff argues that the "ALJ selectively considered and mischaracterized evidence to minimize Plaintiff's symptoms." *Id*. at 18-24. In response, the Commissioner argues that the AC did not err because the "new and material evidence" was from years after Plaintiff's date last insured. ECF No. 23 at 5-12. Regarding Plaintiff's second argument, the Commissioner argues that the ALJ's decision was supported by substantial evidence and should therefore be

affirmed. *Id*. at 13-17. For the reasons explained below, the AC did not err in declining to consider Plaintiff's additional evidence and the ALJ's decision regarding Plaintiff's symptoms was supported by substantial evidence.

### A. AC's Conclusion Regarding Plaintiff's Additional Evidence

Following a decision by the ALJ denying benefits, Plaintiff sought review by the AC, offering several pieces of new evidence from 2019, 2022, and 2023. Tr. 10-31, 40-47, 513-15. The AC declined to review the ALJ's decision, concluding that the evidence Plaintiff provided from 2019 "does not show a reasonable probability that it would change the outcome of the decision," and that the evidence from 2022 and 2023 "does not relate to the period at issue," and therefore, "does not affect the decision about whether [Plaintiff was] disabled beginning on or before June 30, 2020." Tr. 2. Plaintiff challenges the AC's conclusion, arguing that the AC's failure to consider the evidence constitutes an "egregious mistake." ECF No. 20 at 16. The Commissioner responds, asserting that the AC need not have reviewed such evidence as it did not pertain to the period under review and "what little evidence did relate to treatment prior to Plaintiff's date last insured did not provide a reasonable probability of changing the ALJ's decision." Tr. 23 at 5-6.

"When a claimant challenges the AC's denial of review following an offer of new evidence, rather than challenging the ALJ's decision, the AC's denial may be reviewable, but the courts will disturb such rulings only if the AC 'gives an egregiously mistaken ground' for denying review." *Lesieur v. O'Malley*, 2024 WL 513702, at *1 (1st Cir. Feb. 8, 2024). (citing *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001)). Thus, instead of applying the "already deferential substantial-evidence standard of review," courts apply an "exceedingly narrow egregious error standard." *Jacquelyn V. v. Kijakazi*, 2023 WL 371976, at *5 (D.R.I. Jan. 24, 2023) (citing *Mills*, 244 F.3d at 5); *see also Arrington v. Colvin*, 216 F. Supp. 3d 217, 231 (D. Mass. 2016). The AC's assessment is afforded "a great deal of latitude" and "great deference." *Mills*, 244 F.3d at 5 ("[D]espite slight overstatement

6

of reason for declining review, no remand where the Appeals Council's action is entirely reasonable, even if its language was not perfectly apt") (internal quotations omitted). Under such review, the party challenging the AC's denial must demonstrate an error that is "egregious," "flagrant," or "extremely or remarkably bad." *Ortiz Rosado ex el. Rosado Guitierrez v. Barnhart*, 340 F. Supp. 2d 63, 67 (D. Mass. 2004).

In assessing Plaintiff's argument, the Court is "guided by the revised version of the regulation governing the Appeals Council's decision regarding whether to review cases denying disability insurance – 20 C.F.R. § 404.970." *David O.* v. *Berryhill*, 2019 WL 2501884, at *14 (D.R.I. Feb. 13, 2019). The revised regulation requires the AC to review a case if it receives "additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5); *see also Medina v. Berryhill*, 2018 WL 4466024, at *3 (D.N.M. Sept. 18, 2018). Moreover, such additional evidence will only be considered by the AC if the claimant "show[s] good cause for not informing [ ] or submitting the evidence" to the ALJ because of an unavoidable circumstance beyond the claimant's control, including if the claimant "actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing." 20 C.F.R. § 404.970(b)(3)(iv).

Plaintiff argues that the AC erred because it denied reviewed based "only [o]n the time factor of 'new,' because it post-dated the ALJ's decision of June 30, 2022," and thus did not assess the other factors required by regulation. ECF No. 20 at 15. However, Plaintiff's argument mischaracterizes the reasons articulated in the AC's decision.[1] The AC wrote:

---

[1] Even if Plaintiff's characterization was accurate, the AC "need not and often does not give reasons" for its decision to deny review. *Mills*, 244 F.3d at 5 (noting that failure of the AC to explain how it evaluated new evidence presented to it does not automatically require remand) (citation omitted).

> [Plaintiff] submitted medical records from Gerardo Tejedor Gonzalez Practice dated September 17, 2019 (4 pages). **We find this evidence does not show a reasonable probability that it would change the outcome of the decision**. We did not exhibit this evidence.
>
> [Plaintiff] submitted medical records from Hospital Menonita Cayey dated August 22, 2022 through September 4, 2022 (6 pages); from Dr. Karl Vega Lelkes dated February 10, 2023 through February 28, 2023 (6 pages); from Dr. Karl Vega Lelkes dated February 28, 2023 (2 pages); from Gerardo dated February 8, 2023 (4 pages); and from Gerardo dated May 9, 2023 (4 pages). The Administrative Law Judge decided your case through June 30, 2020. **This additional evidence does not relate to the period at issue.** Therefore, it does not affect the decision about whether you were disabled beginning on or before June 30, 2020.

*Id*. (emphasis added). The AC articulated the reasons why it did not consider the additional evidence submitted by Plaintiff. First, the AC concluded that the medical records from Gerardo Tejedor González ("Dr. González") dated September 17, 2019 did "not show a reasonable probability that it would change the outcome of the decision," and accordingly, it did not "exhibit the evidence." Tr. 2; *see also* Tr. 17-21. Second, the AC concluded that the rest of the evidence "does not relate to the period at issue." *Id*. Therefore, the AC did not deny review because it was "new." Moreover, the AC's conclusion is "entirely reasonable" as the AC's stated reasons for declining review mirror the exact language of the elements that the *Plaintiff* must satisfy in order for the AC to review a case. *Mills*, 244 F.3d at 5; *see also* 20 C.F.R. § 404.970(a)(5). If Plaintiff fails to satisfy any of the elements, her ability to obtain review is foreclosed. 20 C.F.R. § 404.970(a)(5). As explained by the AC, Plaintiff did not meet two of the elements and thus her case was not reviewable. Such an assessment is owed "great deference," unless it constitutes an egregious error. *Mills*, 244 F.3d at 5. To determine whether Plaintiff has sustained her burden of showing that the AC made an "egregious error," "it is appropriate for the Court to review the proffered new evidence together with the administrative record." *David O.*, 2019 WL 2501884, at *16. However, courts are limited in their review of the AC's articulated reasons for the rejection of the new evidence. *See Cano v. Saul*, No. 1:19-cv-11563-ADB, 2020 WL 1877876, at *10 (D. Mass. Apr. 15, 2020).

Here, Plaintiff contends that the AC's lack of discussion of the "new" and "material" elements and focus on the time period at issue "was an egregious mistake." ECF No. 20 at 16. Specifically, Plaintiff argues that the additional evidence "might have change[d] [her] RFC to sedentary, instead of light," which would have "direct[ed] a decision of disabled." *Id*. at 16-17 (internal quotations omitted). Plaintiff does not discuss the 2019 medical records from Dr. González or how exactly they would change the RFC analysis. In other words, Plaintiff provides no further explanation and leaves it for "the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990). Admittedly, the Court could undertake an exploratory journey in the record to verify the merit of Plaintiff's argument. However, doing so would encourage Plaintiff's counsel to continue submitting briefs with skeletal arguments. *See United States v. Oliver*, 878 F.3d 120, 127 (4th Cir. 2017) ("Habitual sua sponte consideration of a forfeited issue disincentivizes vigorous advocacy and thereby chips away at the foundation of our justice system."). The court finds no reason to condone or do the job of Plaintiff's counsel. *United States v. Parsons*, 141 F.3d 386, 390 (1st Cir. 1998) ("It is counsel's job on appeal to mine the record and prove the alleged error, not to offer suggestive hints and leave the rest of the work to a busy court."); *Rodríguez-Machado v. Shinseki*, 700 F.3d 48, 50 (1st Cir. 2012) ("[D]oing [Plaintiff's] work for her is not an option, since that would divert precious judge-time from other litigants who could have their cases resolved thoughtfully and expeditiously because they followed the rules."). Thus, any argument regarding the 2019 evidence is waived.

Regarding the additional evidence from 2022 and 2023, the AC found that such evidence did not relate to the period at issue, which is the period leading up to and including the date last insured, *i.e.*, June 30, 2020. Tr. 2, 56. Plaintiff argues that such conclusion is an egregious error because the evidence "contains medical information that [was] present before the ALJ's decision," regarding [her] conditions of lumbar and cervical disk conditions…" ECF No. 20 at 16. However,

9

Plaintiff does not elaborate with specificity how the evidence relates to the period at issue. Instead, Plaintiff argues that the evidence was material and would have changed the outcome of the RFC determination because she had to undergo a surgery. ECF No. 20 at 18. However, the Court's analysis is limited to the AC's stated reason, which here is the relation of the evidence to the period at issue.[2] As Plaintiff does not develop any argument regarding the relation of the additional evidence to the period at issue, such argument is also deemed waived. *See Zannino*, 895 F.2d at 17.

### B. The ALJ's Assessment of Plaintiff's Symptoms

Next, Plaintiff argues that the ALJ "selectively considered and mischaracterized evidence to minimize Plaintiff's symptoms." ECF No. 20 at 18. It is not clear at which step of the sequential evaluation process Plaintiff argues that the ALJ erred with regard to Plaintiff's symptoms. Plaintiff mentions the ALJ's findings at step two, as well as during the RFC analysis. *Id*. at 19; 23-24. Thus, both the ALJ's determination at step two and RFC analysis are discussed.

#### 1. The ALJ's Step Two Determination

At step two, the ALJ determined that Plaintiff had severe impairments including cervical spine degenerative disc disease with spondylosis and cervical straightening lordosis, lumbar spine degenerative disc disease, grade 1 arterolisthesis on L4 over L5 levels and hypertrophic osteoarthrosis changes, hypertrophic osteoarthritis, degenerative joints disease, bilateral trigger thumbs, major depressive disorder, and generalized anxiety disorder. Tr. 57. Plaintiff argues that

---

[2] Even if the Court were to assess the additional evidence for its impact on Plaintiff's RFC analysis, to qualify for Social Security disability benefits, a claimant has the burden to show that he was disabled during the coverage period, which is the time period between the alleged disability onset date and the date last insured. *See* 42 U.S.C. § 416(i); *Alcaide v. Sec'y of Health & Human Servs.*, 601 F. Supp. 669, 672 (D.P.R. 1985); *Sampson v. Califano*, 551 F.2d 881, 882 (1st Cir. 1977). Accordingly, evidence that does not pertain to proving disability during the coverage period should not be considered by an ALJ to determine whether claimant is disabled. Nevertheless, "[m]edical evidence generated **after** a claimant's insured status expires may be considered for what light (if any) it sheds on the question whether claimant's impairment reached disabling severity before his insured status expired." *Padilla Pérez v. Sec'y of Health & Human Servs.*, 985 F.2d 552, at *5 (1st Cir.1993) (unpublished) (emphasis added) (citing *Deblois v. Sec'y of Health & Human Servs.*, 686 F.2d 76, 81 (1st Cir.1982); *Alcaide*, 601 F. Supp. at 672–73); *see also Patoski v. Berryhill*, 320 F.Supp.3d 283, 291 (D. Mass. 2018). Plaintiff does not develop any argument showing that claimant's impairment reached disabling severity before his insured status expired.

Plaintiff was also diagnosed with other medically determinable conditions that "the ALJ ignored [ ] or included or excluded them into or away from the generic definition of degenerative disc disease." ECF No. 20 at 20 (internal quotations omitted). Plaintiff goes on to list thirty symptoms, or what appear to be symptoms, only six of which contain a citation to the record. *Id*. at 20-22. However, the ALJ did not end the sequential evaluation process at step two, thus any perceived step-two deficiency is immaterial because Plaintiff's claim was not "screened out" at that step of the evaluation. *See Hines v. Astrue*, 2012 WL 2752192, at *9 (D.N.H. July 9, 2012) (quoting *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir.1986)) ("The determination at step two as to whether an impairment is severe is a *de minimis* test, designed to 'screen out groundless claims.'"). *See also Torres Roldan v. Saul*, 2021 WL 9349075, at *7 (D.P.R. Feb. 10, 2021) ("[B]ecause the ALJ's evaluation of this claim proceeded past step two and considered the effects of all of Plaintiff's impairments through the remainder of the sequential evaluation process, any error at step two . . . had no effect.").

Moreover, if Plaintiff intended to argue that failing to include certain limitations in the RFC generated an inconsistency between the ALJ's step two findings and the RFC, such error also has no effect, as "[a]ll that is required of the claimant at this step is 'to make a reasonable threshold showing that the impairment is one which could conceivably keep him or her from working.'" *Hines*, 2012 WL 2752192 at *9 (quoting *McDonald*, 795 F.2d at 1122). *See also Sykes v. Apfel*, 228 F .3d 259, 268 n. 12 (3d Cir. 2000)) ("An ALJ's finding that an impairment is severe does not necessarily translate into functional restrictions in the RFC"). Accordingly, the ALJ did not err at step two.

## 2. The ALJ's RFC Determination

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-2p." Tr. 61. The

11

ALJ also considered "the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c." *Id*. Plaintiff does not discuss a specific medical opinion or medical finding that the ALJ failed to consider. Instead, Plaintiff argues that the "ALJ's statements are not aligned with the reality posed in the record." ECF No. 20 at 23. For the following reasons, the ALJ's RFC determination is supported by substantial evidence.

First, Plaintiff argues that the ALJ's determination did not align with the RFC given by the state medical consultants. *Id*. at 23-24. However, conclusions as to whether a claimant is "disabled" and related legal conclusions are administrative decisions that are to be made by the Commissioner, not by medical personnel. 20 C.F.R. § 404.1527(e); *see Rivera v. Comm'r of Soc. Sec.*, 2010 WL 132329, at *5 (D.P.R. Jan. 8, 2010) ("[W]hile [his physician] believed that [c]laimant was disabled and unable to work, disability under the Act is a legal determination that is reserved to the ALJ, and medical experts are not qualified to render this ultimate legal conclusion.") (citing *Frank v. Banhart*, 326 F.3d 618, 620 (5th Cir. 2003) (internal citation omitted)). Furthermore, the ALJ considered the opinions of the state medical consultants, Dr. Vicente Sánchez, M.D., and Dr. Rafael Queipo, M.D., in making his determination, and concluded that Plaintiff has a more limited RFC than found by the state medical consultants. Tr. 61-65. *See also* Tr. 380-396; 398-412.

> The undersigned finds partially persuasive the opinions of Dr. Sánchez and Dr. Queipo because these doctors did not review the entire medical record, but rather reviewed the record as it existed on July 31, 2020, and on October 22, 2020, respectively. The undersigned concurs that the claimant's physical impairments caused functional limitations which limited her to the light exertional level. **However, the undersigned finds that the record showed that the claimant warranted more non-exertional limitations than what these doctors opined**. In addition, the undersigned finds that the record and the evidence received at the hearing level showed that the claimant was limited to the light exertional level, and that she had postural, manipulative, and environmental limitations, among others. For these reasons, the undersigned finds partially persuasive Dr. Sánchez's and Dr. Queipo's opinions.

*Id*. at 65 (emphasis added). As Plaintiff fails to cite to particular findings in the record that the ALJ failed to consider, such a determination is supported by substantial evidence. *See Dube v. Kijakazi*, No. 23-1068, 2024 WL 372841, at *1 (1st Cir. Jan. 16, 2024) (citing *Samsel v. Kijakazi*, No. 4:21-CV-00962, 2022 WL 4120154, at *13 (M.D. Pa. Sept. 9, 2022) ("[W]here the ALJ finds a more restrictive RFC than medical opinions indicate, the ALJ's RFC determination will not be found unsupported by substantial evidence without additional cause.")).

Second, Plaintiff challenges the ALJ's statement that "the treatment sought by Plaintiff is not consistent with her subjective complaints." ECF No. 20 at 24; Tr. 62, 67-68. To support this argument, Plaintiff simply argues that "that is not true," and points to evidence that "she had to undergo cervical surgery for her condition."[3] *Id*. However, the ALJ's determination is supported by substantial evidence as the ALJ specifically considered Plaintiff's subjective complaints and determined that they were not "entirely consistent with the medical evidence and other evidence in the record." Tr. 62. The ALJ considered Plaintiff's Disability Report, where Plaintiff alleged symptoms, and considered such report together with the record as a whole, finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 62. Specifically, the ALJ found that "[t]he treatment notes from the record do not contain results showing that the claimant had the exertional and non-exertional limitations that she alleged." Tr. 67. Therefore, the ALJ's evaluation of Plaintiff's symptoms was supported by substantial evidence.

---

[3] As previously discussed, Plaintiff's surgery, in September of 2022, was significantly after her date last insured. Tr. 913-914. Thus, the ALJ did not err in not considering such evidence. *See* 42 U.S.C. § 416(i); *Alcaide v. Sec'y of Health & Human Servs.*, 601 F. Supp. 669, 672 (D.P.R. 1985); *Sampson v. Califano*, 551 F.2d 881, 882 (1st Cir. 1977).

## V.   CONCLUSION

Based on the foregoing analysis, the Court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits contained no legal error as it was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of August, 2025.

s/Marcos E. López  
U.S. Magistrate Judge
